[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 223.]

MONTPELIER PUBLIC LIBRARY, APPELLEE, *v*. WILLIAMS COUNTY BUDGET
COMMISSION ET AL.; BRYAN PUBLIC LIBRARY, APPELLANT.
[Cite as *Montpelier Pub. Library v. Williams Cty. Budget Comm.*,
1996-Ohio-188.]

*Public libraries—Allocation of county library support funds—Remand from*
*Supreme Court to Board of Tax Appeals to reallocate Williams County*
*library and local government support funds for years 1987 and 1989.*

(No. 94-2140—Submitted September 28, 1995—Decided January 10, 1996.)

APPEAL from the Board of Tax Appeals, Nos. 86-F-1282 and 88-F-838.

————————————

{¶ 1} This case involves an ongoing dispute, between appellee, Montpelier Public Library ("Montpelier"), and appellant, Bryan Public Library ("Bryan"), the only two public libraries in Williams County, Ohio. The dispute concerns the allocation of the Williams County library and local government support fund for the years 1987 and 1989. This is the third appeal in a series which originally began before this court in 1991. In this appeal, Bryan contends that the Board of Tax Appeals ("BTA") in *Montpelier Pub. Library v. Williams Cty. Budget Comm. et al.* (Sept. 9, 1994), BTA Nos. 86-F-1282 and 88-F-838, unreported ("*BTA 1994*"), failed to specify the details of its prior computations as ordered by this court, that the BTA failed to set forth the details of its new findings and computations, and that the BTA decision failed to allocate based on actual needs. Further history of the past appeals is set forth in the opinion.

{¶ 2} This cause is before this court upon an appeal as a matter of right.

————————————

*Squire, Sanders & Dempsey* and *Steven E. Grassbaugh*; *Newcomer, Shaffer, Bird & Spangler* and *David C. Newcomer*, for appellant.

———————————

***Per Curiam.***

**{¶ 3}** These cases are before us for the third time because the BTA has failed to follow our past instructions. This matter would have been quickly and simply resolved if the BTA had followed our instructions on the first remand.

**{¶ 4}** In the first appeal filed with this court, three issues were considered. The first issue was whether the appeal relating to the 1988 funds was filed in a timely manner; we affirmed the BTA's dismissal because the appeal had not been so filed. The second issue was whether the BTA had failed to specify the reasons for its decision, and merely recited evidence without assigning any reasons or numbers which would be of value to the court in reviewing the decision. We reviewed the steps the BTA had taken and held that its determination of needs was not unreasonable or unlawful. The third and final issue was the propriety of the BTA's consideration of Bryan's expendable fiduciary funds in making its allocation. We held that interest earned from Bryan's expendable fiduciary funds was in that class of funds that could result in a reduction of Bryan's allocation. *Montpelier Pub. Library v. Williams Cty. Budget Comm.* (1991), 61 Ohio St. 3d 390, 575 N.E.2d 152 ("*Montpelier 1991*").

**{¶ 5}** We remanded for the limited purpose of having the BTA "review *** the record, for a determination of what part, if any, of the unencumbered balance in Bryan's expendable fiduciary funds consisted of interest on revenues deposited into that account, and, if necessary, for a redetermination of the appropriate allocations to Montpelier and to Bryan for 1987 and 1989." *Montpelier 1991* at 396, 575 N.E.2d at 157. Quite simply, we instructed the BTA to take its prior determination of needs for Bryan and make the appropriate adjustment for any earned interest included in the expendable fiduciary fund. After adjusting the needs amount for Bryan for the earned interest, the BTA was to redetermine the allocation

percentages and dollar amounts for Montpelier and Bryan by calculating the needs of each library as a percentage of the total needs of both libraries.

{¶ 6} On remand, the BTA determined that the unencumbered balance in Bryan's expendable fiduciary account consisted primarily of nontax revenues such as bequests, donations, and gifts. *Montpelier Pub. Library v. Williams Cty. Budget Comm. et al.* (Mar. 6, 1992), BTA Nos. 86-F-1282 and 88-F-838, unreported ("*BTA 1992*"). The BTA further stated that while it noted the presence of Bryan's expendable fiduciary account, "it did not allow the simple existence of that non-tax revenue to contribute to a reduction in Bryan's allocation ***." However, the BTA admitted that it "did not separately distinguish the interest earned by Bryan on the non-tax revenues deposited in Bryan's expendable fiduciary account." The BTA found that the record did indicate that Bryan had received interest on the expendable fiduciary account. Evidence of the amount of the interest was contained in a financial report, for the fiscal year ending December 31, 1988, which showed interest earnings of $22,087 on investments. The BTA held that the $22,000 sum "should not simply be added to or subtracted from the existing allocations, but applied, in context, with all the other relevant factors considered (and set forth) in the Board's previous analysis ***." Finally, the BTA held that the prior allocations should be modified "by slightly increasing Montpelier's allocations *** and decreasing Bryan's shares."

{¶ 7} In its second appeal to this court Bryan contended that the BTA had failed to allocate funds pursuant to R.C. 5705.32(B), to properly follow this court's instructions, and to redetermine Bryan's needs; Bryan further contended the BTA erred in considering the entire amount of interest earned by Bryan and the unencumbered balance in Bryan's expendable fiduciary funds in calculating the allocation. *Montpelier Pub. Library v. Williams Cty. Budget Comm.* (1993), 66 Ohio St. 3d 634, 614 N.E.2d 1040 (*"Montpelier 1993"*).

**{¶ 8}** We reviewed the BTA's decision and found no fault with its determination that the interest earned on Bryan's expendable fiduciary account increased its ability to meet its outstanding needs. However, because the BTA did not explain how it arrived at its modified allocations, we reversed and remanded with instructions to specify the details of the computation it used to determine the modified allocations.

**{¶ 9}** On the second remand, the BTA undertook to determine completely *new needs* for both Montpelier and Bryan. *BTA 1994*. While the procedure used by the BTA for calculating the new needs may have been proper for a new case, it was not proper in this case. In *Montpelier 1991* we affirmed the BTA's initial determination of needs. The BTA has never been instructed by this court to redetermine the original needs of the libraries. The original needs of the libraries were set as a result of our decision in *Montpelier 1991*. The BTA should have used as a starting point for its redetermination of the allocations the needs amounts that were used in its decision in *Montpelier Pub. Library v. Williams Cty. Budget Comm. et al.* (June 29, 1990), BTA Nos. 86-F-1282, 87-F-1300 and 88-E-838, unreported ("*BTA 1990*"). The BTA is instructed to take the needs amounts which it evidently determined for each library in *BTA 1990*, adjust Bryan's needs for the amount of the earned interest, in the same manner set forth in *BTA 1994*, and redetermine the allocated percentages and dollar amounts for Bryan and Montpelier. Because the BTA did not set forth the original needs amounts in *BTA 1990*, those amounts are not known to the court.

**{¶ 10}** We find it ironic that, in *BTA 1992*, the BTA stated that the earned interest amounts could not be handled by simply adding or subtracting from the existing allocations. However, in *BTA 1994*, the interest amounts were simply subtracted from Bryan's needs amounts in order to redetermine the allocations.

**{¶ 11}** Because the question of the amount of the yearly distribution of earned interest ($4,087 for both 1987 and 1989) determined by the BTA was not challenged in this appeal, the same interest figures must be used on remand.

**{¶ 12}** While we reject the necessity of the new calculation of needs in *BTA 1994*, we commend the procedure used by the BTA in drafting its decision. *BTA 1994* sets forth the results of the BTA's reasoning category by category, in dollars and cents. This procedure facilitates a review of the results by the parties and this court. If that same procedure had been followed in *BTA 1990*, perhaps this appeal would not have been necessary.

**{¶ 13}** Because we find the decision of the BTA to be unreasonable and unlawful, we reverse and remand with instructions to the BTA to reallocate the Williams County library and local government support funds for the years 1987 and 1989, as set forth above.

*Decision reversed*

*and cause remanded.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER AND COOK, JJ., concur.

_____